FILED

13 OCT 24 PM 2:21

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH A. FOSTER, Individually and On Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>vs.<br><br>MAXWELL TECHNOLOGIES, INC., DAVID J. SCHRAMM, KEVIN S. ROYAL and VAN M. ANDREWS,<br><br>           Defendants. | No. 13-cv-00580-BEN-RBB<br><br>**ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING EMPLOYEES' PENSION PLAN OF THE CITY OF CLEARWATER AS LEAD PLAINTIFF, AND APPROVING ITS SELECTION OF CLASS COUNSEL**<br><br>[Docket Nos. 30, 31, 32, 33] |

| | |
|---|---|
| JOSHUA WEINSTEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>MAXWELL TECHNOLOGIES, INC., DAVID J. SCHRAMM, KEVIN S. ROYAL and VAN M. ANDREWS,<br><br>　　　　　Defendants. | No. 3:13-cv-00686-BEN-RBB |
| VICTOR SANJUAN ABANADES, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>MAXWELL TECHNOLOGIES, INC., DAVID J. SCHRAMM, KEVIN S. ROYAL and VAN M. ANDREWS,<br><br>　　　　　Defendants. | No: 3:13-cv-00867-BEN-RBB |
| EDWARD MEBARAK, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>MAXWELL TECHNOLOGIES, INC., DAVID J. SCHRAMM, KEVIN S. ROYAL and VAN M. ANDREWS,<br><br>　　　　　Defendants. | No: 3:13-cv-00942-BEN-RBB |

## BACKGROUND

Defendant Maxwell Technologies, Inc. manufactures energy storage and power-delivery related products. Defendant David J. Schramm is the Chief Executive Officer and President of Maxwell, Defendant Kevin S. Royal is the Chief Financial Officer and Senior Vice President of Maxwell, and Defendant Van M. Andrew is the former Senior Vice President of Sales and Marketing of Maxwell.

On March 7, 2013, Maxwell disclosed that the Audit Committee of Maxwell's Board of Directors had determined that Maxwell had prematurely recognized revenue from certain sales and the published financial statements for the 2011 and 2012 fiscal years were incorrect. Maxwell announced that it would issue revised financial statements, which would reduce reported revenues by $12 million over the seven-quarter period. By the end of the trading session on March 8, 2013, Maxwell's stock price had fallen $1.01 per share, or 11.09 percent, to $8.10 per share.

This action was filed on March 13, 2013. The Complaint alleges that Defendants misled investors by: (1) overstating Maxwell's revenues and earnings in 2011 and 2012; (2) reporting revenues prior to the time the sales price was fixed and/or collection was reasonably assured; and (3) having internal accounting controls that were deficient and permitted the premature recognition of revenue. There are three related actions: *Weinstein v. Maxwell Technologies, Inc.*, No. 13-CV-686 BEN (RBB), *Abanades v. Maxwell Technologies, Inc.*, No. 13-CV-867 BEN (RBB), and *Mebarak v. Maxwell Technologies, Inc.*, No. 13-CV-942 BEN (RBB).

Presently before the Court are: (1) Byron Lai, Kathleen Lai and Alice Lai ("Lai Family")'s Motion for Consolidation, Appointment of Lead Plaintiff and Approval of Lead and Liaison Counsel (Docket No. 30); (2) Martin Schiffenbauer's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff and Approval of Lead Counsel (Docket No. 31); (3) Public School Teachers' Pension and Retirement Fund of Chicago ("Chicago Teachers") and Electrical Workers Pension Fund, Local 103 I.B.E.W. ("Local 103") (collectively "Chicago Group")'s Motion for Consolidation,

Appointment as Lead Plaintiff, and Approval of Selection of Co-Lead Counsel (Docket No. 32); and (4) The Employees' Pension Plan of the City of Clearwater ("Clearwater")'s Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of its Selection of Class Counsel (Docket No. 33).

## DISCUSSION

### I. MOTIONS FOR CONSOLIDATION

The Lai Family, Schiffenbauer, the Chicago Group, and Clearwater all seek consolidation of the Related Actions, *Foster v. Maxwell Technologies, Inc.*, Case No. 13-CV-580 BEN (RBB), *Weinstein v. Maxwell Technologies, Inc.*, No. 13-CV-686 BEN (RBB), *Abanades v. Maxwell Technologies, Inc.*, No. 13-CV-867 BEN (RBB), and *Mebarak v. Maxwell Technologies, Inc.*, No. 13-CV-942 BEN (RBB). Defendants have consented to the consolidation of the Related Actions. (Docket Nos. 35, 36.)

Consolidation is appropriate where there is "a common question of law or fact" pending before the Court. FED. R. CIV. P. 42(a). The Court has broad discretion under Rule 42(a) to consolidate pending actions. *See Plumbers & Pipefitters Local 51 Pension Fund v. Petco Animal Supplies, Inc.*, No. 05-CV-823, 2005 WL 5957815, at *2 (S.D. Cal. Aug. 17, 2005).

Here, the Related Actions present substantially identical factual and legal issues. The Related Actions arise from the same underlying facts and circumstances, allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and name the same defendants. Accordingly, the parties' motions to consolidate are **GRANTED**.

### II. MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides a procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B). Specifically:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i); *see also In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).

After considering any motions made by class members, the court is to appoint the movant that is determined to be most capable of adequately representing the interests of the class as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). There is a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) filed a complaint or made a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Cavanaugh*, 306 F.3d at 729-30. This presumption may be rebutted by proof that the presumptively most adequate plaintiff "'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Cavanaugh*, 306 F.3d at 741 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

The Ninth Circuit has not prescribed a method for determining which movant has the largest "financial interest." Rather, "the court may select accounting methods that are both rational and consistently applied." *Id.* at 730 n.4.

This Court focuses on the amount of potential recovery in the relief sought by the class. *See Schueneman v. Arena Pharm., Inc.*, No. 10cv1959, 2011 WL 3475380, at *3 (S.D. Cal. Aug. 8, 2011); *Ruland v. InfoSonics Corp.*, No. 06cv1231, 2006 WL 3746716, at *5 (S.D. Cal. Oct. 23, 2006). In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), the Supreme Court distinguished between economic losses and

recoverable damages. An inflated purchase price due to deception or misrepresentation does not cause the relevant economic loss, because when the transaction takes place the purchase price is offset by ownership of a share that at that time possesses equivalent value. *Id.* at 342. The misrepresentation does not lead to a loss if the purchaser sells the shares before the truth is revealed. *Id.* "Accordingly, for purposes of evaluating financial interest, it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed." *Schueneman*, 2011 WL 3475380, at *3.

Consistent with *Dura*, this Court has adopted the retained share methodology. *See id.* at *4. Under the retained share methodology, the court "looks to the number of retained shares at the end of the class period" to determine the potential recovery. *Id.* "Under the retained share methodology, the purchase price of the retained shares is subtracted from either (1) the average of the daily closing price of the stock during the 90 day period beginning at the end of the class period (if the share was not sold during the 90 day period) or (2) the higher of the actual sale price or an average of the daily closing price from the end of the class period to the date of sale (if a share was sold within the 90 day period). The purchase price is calculated based either on the purchase price of shares purchased at the beginning of the class period or the purchase price of shares purchased most recently, but within the class period." *Id.* (citation omitted).

### A. Lai Family's Motion for Appointment of Lead Plaintiff

On May 13, 2013, the Lai Family moved to be appointed as lead plaintiff. (Docket No. 30.) On June 3, 2013, the Lai Family filed a notice of non-opposition with respect to the competing pending motions for appointment as lead plaintiff. (Docket No. 34.) Accordingly, the Lai Family's motion to be appointed as lead plaintiff is **DENIED**.

### B. Schiffenbauer's Motion for Appointment of Lead Plaintiff

On May 13, 2013, Schiffenbauer moved to be appointed as lead plaintiff.

(Docket No. 31.) Schiffenbauer argues that he has the largest financial interest in the relief sought by the class because he purchased 4,000 shares of Maxwell during the class period and has suffered losses of $18,248. As discussed below, Clearwater has the largest financial interest in the relief sought by the class. In addition, Schiffenbauer does not oppose Clearwater's motion to be appointed lead plaintiff. Accordingly, Schiffenbauer's motion to be appointed as lead plaintiff is **DENIED**.

### C. The Chicago Group's and Clearwater's Motions for Appointment of Lead Plaintiff

On May 13, 2013, the Chicago Group moved to be appointed as lead plaintiff. (Docket No. 32.) Also on May 13, 2013, Clearwater moved to be appointed as lead plaintiff. (Docket No. 33.)

First, both the Chicago Group and Clearwater timely moved to serve as lead plaintiff. Notice that a class action had been initiated against Defendants was first published in Business Wire on March 13, 2013, giving the parties until May 13, 2013 to move to be appointed as lead plaintiff.

Second, the Court determines which party has the largest financial interest in the relief sought by the class. The Chicago Group argues that they have the largest financial interest in the relief sought by the class because they have suffered $907,930 in losses as calculated under the Last-In-First-Out ("LIFO")[1] method. Clearwater argues that because the Chicago Group sold most of its stock ten months before the disclosure of the accounting fraud, the Chicago Group has in fact suffered only $178,994 in losses that may potentially be recovered in the relief sought by the Class. According to Clearwater, because Clearwater has suffered $196,969 in losses, it has the largest financial interest in the relief sought by the class.

The Chicago Group does not dispute Clearwater's calculation that only $178,994

---

[1] Last-In-First-Out ("LIFO") and First-In-First Out ("FIFO") are two methods used to calculate losses. *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-3451, 2011 WL 566814, at *10 (N.D. Cal. Feb. 15, 2011). LIFO is the favored method in the Ninth Circuit. *Id.*

of the Chicago Group's losses resulted from the sale of stock that took place after the March 2013 disclosure of accounting fraud. Rather, the Chicago Group argues that a partial disclosure occurred on April 26, 2012, when Maxwell disclosed disappointing results for the first quarter of 2012. According to the Chicago Group, this disclosure contained statements regarding Maxwell's poor revenues and poor revenue guidance. The Chicago Group claims that they suffered $907,930 of losses as a result of sales that took place after this partial disclosure of the fraud.

On the contrary, although the complaints filed in the Related Actions mention Maxwell's April 2012 earnings miss, none of them identify this or any other announcement prior to the March 7, 2013 disclosure as disclosing, in whole or in part, Maxwell's alleged fraud. *See Foster* Compl. ¶¶ 30-32; *Weinstein* Compl. ¶¶ 27-28; *Abanades* Compl. ¶¶ 28-30; *Mebarak* Compl. ¶¶ 27-28. The Chicago Group's own Complaint alleges that after the April 2012 earnings miss, "Maxwell's stock continued to trade at artificially inflated levels as defendants concealed the Company's improper revenue recognition and deficient internal controls." *Foster* Compl. ¶ 31. The Complaints in the Related Actions all allege that the fraud was not disclosed until after the closing of the stock market on March 7, 2013. *See Foster* Compl. ¶¶ 1, 4-7; *Weinstein* Compl. ¶¶ 1, 3-6; *Abanades* Compl. ¶¶ 1, 3-6; *Mebarak* Compl. ¶¶ 1, 3-6. The Court is limited to considering the allegations in the pending complaints at this stage of the litigation. *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2007 WL 680779, at *5 (E.D.N.Y. Mar. 2, 2007) ("*Dura* . . . require[s] a court to make pre-discovery loss causation determinations regarding asserted claims . . . that are based on the facts alleged in the complaint.").

Because the disclosure of fraud did not take place until March 2013, only $178,994 of the Chicago Group's losses resulted from the sale of stock that took place after the disclosure of accounting fraud. Under the retained share methodology, the Chicago Group has suffered $178,994 in losses while Clearwater has suffered $196,969 in losses. Accordingly, Clearwater has the larger financial interest in this

action.

Third, the Court determines whether Clearwater otherwise satisfies the requirements of Federal Rule of Civil Procedure 23. Rule 23(a) provides that a party may serve as a class representative if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Of these four prerequisites, only typicality and adequacy are relevant to the lead plaintiff analysis. *See, e.g., Russo v. Finisar Corp.*, No. 5:CV 11-1252, 2011 WL 5117560, at *3 (N.D. Cal. Oct. 27, 2011).

The typicality prerequisite requires that "the presumptive lead plaintiff's claim arise from the same event or course of conduct giving rise to the claims of other class members and be based on the same legal theory." *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721, 2004 WL 5159061, at *6 (S.D. Cal. Jan. 5, 2004) (internal quotation marks omitted). This test "considers whether other members of the class have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotation marks omitted). The representative claims are "typical" if they are "reasonably co-extensive with those of absent class members," though they "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, Clearwater satisfies the typicality prerequisite. Like the other class members, Clearwater: (1) purchased or acquired Maxwell securities during the class period; (2) at prices artificially inflated by Maxwell's allegedly false and misleading statements and/or omissions; and (3) suffered damages when the March 2013 disclosure of accounting fraud removed the inflation caused by Defendants' alleged fraud. Clearwater's claims are typical of those of the class because its claims arise out of the same course of events.

In regards to the adequacy prerequisite, representation is adequate if the plaintiffs: (1) "do not have conflicts of interest with the proposed class" and (2) are "represented by qualified and competent counsel." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1185 (9th Cir. 2007).

Here, Clearwater satisfies the adequacy prerequisite. Clearwater's interests are aligned with the interests of the members of the proposed class. There is no evidence of antagonism or conflict between Clearwater's interests and the interests of the putative class. Because Clearwater suffered injury by purchasing Maxwell securities at prices artificially inflated by Maxwell's allegedly materially false and misleading statements, Clearwater's interests are aligned with the interests of the other class members. In addition, Clearwater has chosen qualified and competent counsel, as explained below.

The Chicago Group argues that Clearwater would be an inadequate lead plaintiff. According to the Chicago Group, Clearwater has demonstrated that it would not fulfill its role as lead plaintiff to maximize recovery for the entire class because it has asked the Court to ignore a partial disclosure of fraud alleged in two of the four complaints. As explained above, however, a partial disclosure of fraud has not been alleged in any of the Complaints filed in the Related Actions. All four complaints allege that the fraud was not disclosed until after the closing of the stock market on March 7, 2013. *See Foster* Compl. ¶¶ 1, 4-7; *Weinstein* Compl. ¶¶ 1, 3-6; *Abanades* Compl. ¶¶ 1, 3-6; *Mebarek* Compl. ¶¶ 1, 3-6.

Accordingly, the Chicago Group's motion to be appointed lead plaintiff is **DENIED**, and Clearwater's motion to be appointed lead plaintiff is **GRANTED**.

## II. MOTION FOR APPROVAL OF LEAD COUNSEL

Pursuant to the PSLRA, the lead plaintiff shall select and retain counsel to represent the class, subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). A court may disturb the lead plaintiff's choice of counsel only if "necessary to protect the interests of the plaintiff class." Statement of Manager—The "Private Securities

1 Litigation Reform Act of 1995," 141 Cong. Rec. H14691-08, at H13700 (daily ed. Nov. 28, 1995); *see also Cavanaugh*, 306 F.3d at 732-33.

Here, Clearwater has selected Saxena White P.A. to serve as lead counsel. Saxena White has extensive experience litigating securities class actions, and has successfully prosecuted numerous securities fraud class actions on behalf of investors. (*See* White Decl. [Docket No. 33-2], Exh. 4.) For instance, Saxena White has served as class counsel in *Central Laborers' Pension Fund v. SIRVA, Inc.*, No. 04 CV-07644 (N.D. Ill.) ($53.3 million settlement), and in *In re Sadia S.A. Securities Litigation*, No. 08-CV-9528 (S.D.N.Y.) ($27 million settlement).

In addition, Clearwater has selected Bernstein Litowitz Berger & Grossmann LLP to serve as liaison counsel. Bernstein Litowitz has successfully prosecuted numerous complex securities class actions on behalf of investors. For instance, Bernstein Litowitz has served as class counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-CV-3288 (S.D.N.Y.) (settlements in excess of $6 billion), and in *In re Nortel Networks Corp. Securities Litigation*, No. 05-MD-1659 (S.D.N.Y.) (recovering $1.3 billion for investors). (*See See* White Decl. [Docket No. 33-2], Exh. 5.)

Accordingly, Clearwater's motion to appoint Saxena White as lead counsel and Bernstein Litowitz as liaison counsel is **GRANTED**.

///
///
///
///
///
///
///
///
///

# CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

## I. CONSOLIDATION

1. Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, the following actions are hereby consolidated for all purposes into one action:

| Case Caption | Docket No. |
| --- | --- |
| Foster v. Maxwell Technologies, Inc., et al. | 3:13-cv-00580-BEN-RBB |
| Weinstein v. Maxwell Technologies, Inc., et al. | 3:13-cv-00686-BEN-RBB |
| Abanades v. Maxwell Technologies, Inc., et al. | 3:13-cv-00867-BEN-RBB |
| Mebarak v. Maxwell Technologies, Inc., et al. | 3:13-cv-00942-BEN-RBB |

2. These actions shall be referred to herein as the "Consolidated Actions." This Order shall apply to the Consolidated Actions and to each case that is subsequently filed in this Court or transferred to this Court that relates to the same subject matter as in the Consolidated Actions.

3. Every pleading in this Consolidated Action shall bear the following caption:

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
| --- | --- |
| IN RE MAXWELL TECHNOLOGIES INC., SECURITIES LITIGATION | Case No. 3:13-cv-00580-BEN-RBB |

4. This Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case that might properly be consolidated as part of this Consolidated Action.

## II. MASTER DOCKET AND MASTER FILE

5. A Master Docket and Master File shall be established for the Consolidated Actions. The Master File shall be Case No. 3:13-cv-00580. All orders, pleadings, motions and other documents shall, when filed and docketed in the Master file, be deemed filed and docketed in each individual case to the extent applicable. When an order, pleading, or other document is filed with a caption indicating that it is applicable to fewer than all of these consolidated actions, the clerk shall file such pleadings in the Master File and note such filing in the Master Docket and in the docket of each action referenced.

## III. NEWLY-FILED OR TRANSFERRED ACTIONS

6. When a case that arises out of the subject matter of this action is hereinafter filed in this Court or transferred to this Court from another court, the Clerk of this Court shall:

    a. file a copy of this Order in the separate file for such action;

    b. mail a copy of this Order to the attorneys for the plaintiff(s) in the newly filed or transferred case and to any new defendant(s) in the newly filed or transferred case; and

    c. make the appropriate entry in the docket for this action.

7. Each new case arising out of the subject matter of this Consolidated Action that is filed in this Court or transferred to this Court shall be consolidated with this action and this Order shall apply thereto, unless a party objecting to this Order or any provision of this Order shall, within ten (10) days after the date upon which a copy of this Order is served on counsel for such party, files an application

for relief from this Order or any provision herein and this Court deems it appropriate to grant such application.

### IV. APPOINTMENT OF LEAD PLAINTIFF, LEAD COUNSEL AND LIAISON COUNSEL

8. Movant has timely moved the Court to be appointed Lead Plaintiff in the Consolidated Action.

9. Having considered the provisions of 15 U.S.C. § 78u-4(a)(3)(B), and the material submitted by Clearwater in support of its motion, the Court hereby concludes that Clearwater is the "most adequate plaintiff" and that Clearwater satisfies the requirements of 15 U.S.C. § 78u-4(a)(3)(B). The Court hereby appoints Clearwater to be the Lead Plaintiff and to represent the interests of the Class.

10. Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), Lead Plaintiff has selected and retained the law firms of Saxena White P.A. to serve as Lead Counsel and Bernstein Litowitz Berger & Grossmann LLP to serve as Liaison Counsel. The Court hereby approves the Lead Plaintiff's selection of Saxena White P.A. as Lead Counsel and Bernstein Litowitz Berger & Grossmann LLP as Liaison Counsel.

11. Lead Counsel shall have the following responsibilities and duties, to be carried out either personally or through other counsel designated by Lead Counsel:

    a. to coordinate the briefing and argument of any and all motions;

    b. to coordinate the conduct of any and all discovery proceedings;

    c. to coordinate the examination of any and all witnesses in depositions;

    d. to coordinate the selection of counsel to act as spokesperson at all pretrial conferences;

e. to call meetings of the plaintiffs' counsel as they deem necessary and appropriate from time to time;

f. to coordinate all settlement negotiations with counsel for defendants;

g. to coordinate and direct the pretrial discovery proceedings and the preparation for trial and the trial of this matter and to delegate work responsibilities to selected counsel as may be required;

h. to coordinate the preparation and filings of all pleadings; and

i. to supervise all other matters concerning the prosecution or resolution of the Consolidated Actions.

12. No motion, request for discovery, or other pretrial proceeding shall be initiated or filed by any plaintiff without the approval of Lead Counsel, so as to prevent duplicative pleadings or discovery. No settlement negotiations shall be conducted without the approval of Lead Counsel.

13. Lead Counsel shall have responsibility for receiving and disseminating Court orders and notices.

14. Lead Counsel shall be the contact between plaintiffs' counsel and defendants' counsel, shall serve as the spokespersons for plaintiffs' counsel, and shall direct and coordinate the activities of plaintiffs' counsel. Lead Counsel shall be the liaison between the Court and plaintiffs and their counsel.

IT IS SO ORDERED.

DATED: 10/24/13

HON. ROGER T. BENITEZ
UNITED STATES DISTRICT JUDGE